**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                No. CR 19-4367 JB

JESSICA PANGBURN,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Second Objection to Presentence Report - Total Loss Amount, filed June 1, 2020 (Doc. 29)("Second Objection").[1]  The primary issue is whether Plaintiff United States of America has proven, by a preponderance of the evidence, that Defendant Jessica Pangburn's offense conduct -- wire fraud in violation of 18 U.S.C. § 1343 -- involves the embezzlement of $72,894.12, as the Presentence Investigation Report, filed March 19, 2020 (Doc. 16)("PSR"), asserts, or whether Panbgurn's offense involves the embezzlement of $69,469.12, the amount to which Pangburn admits in the Plea Agreement, filed November 26, 2019 (Doc. 4).  The Court concludes that the United States has not proven, by a preponderance of

---

[1]Both Plaintiff United States of America and Defendant Jessica Pangburn previously objected to the United States Probation Office's conclusion that two sentencing enhancements under the United States Sentencing Guidelines Manual § 2B1.1(b)(10)(C) and § 3B1.1 apply to Pangburn's offense level.  See United States' Combined Objections to Presentence Report and Sentencing Memorandum at 1, filed April 9, 2020 (Doc. 19); Objection to Presentence Report at 1, filed April 21, 2020 (Doc. 21).  Although the parties agreed that the enhancements are inapplicable to Pangburn's offense, the USPO maintained the enhancements' applicability.  See Addendum to the Presentence Report at 2, filed May 18, 2020 (Doc. 25).  The Court issued a Memorandum Opinion and Order sustaining the United States' and Pangburn's objections.  See Memorandum Opinion and Order at 1, filed June 1, 2020 (Doc. 27).

the evidence, that Pangburn is responsible for $72,89.12.  Accordingly, the Court sustains the Second Objection.

## **FINDINGS OF FACT**

The Court takes its facts from: (i) the Plea Agreement, filed November 26, 2019 (Doc. 4); (ii) the Presentence Investigation Report, filed March 19, 2020 (Doc. 16)("PSR"); and (iii) the Sealed Supplement to Second Objection to Presentence Report, filed June 1, 2020 (Doc. 30)("Sealed Supplement").[2]

1.      In 2017, Pangburn worked as the office manager for the International Union of Operating Engineers Local 953 ("Local 953"), in Albuquerque, New Mexico.  See Plea Agreement ¶ 8, at 3.

2.      One of her duties was using QuickBooks, an accounting software program, to arrange weekly salary payments to Local 953's employees.  See Plea Agreement ¶ 8, at 3.

3.       Pangburn would make "entries in the accounting software that were electronically transferred to the payroll vendor who provided the software," and the payroll vendor would deposit the money in the employees' bank accounts.  Plea Agreement ¶ 8, at 3-4.

---

[2]In the Sealed Supplement, Pangburn attaches portion of "the government investigative reports" regarding Pangburn's offense.  Sealed Supplement at 1.  The court may rely upon reliable hearsay in determining Pangburn's sentence, so long as the evidence meets the preponderance-of-the-evidence standard.  See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.), aff'd, 523 F.3d 1258 (10th Cir. 2008).  Accord United States v. Cook, 550 F.3d 1292, 1296 (10th Cir. 2008)("[T]he due process clause protects a defendant's right not to be sentenced on the basis of materially incorrect information")  Here, Pangburn is the hearsay's proponent and the United States does not object to Pangburn's use of the reports or otherwise question the reports' reliability.  Accordingly, the Court also relies on the information that the Sealed Supplement contains.

4.      Another employee, Local 953's administrative assistant, was responsible for collecting dues payments from Local 953's members, although Pangburn occasionally assisted with this task.  See Sealed Supplement at 3.

5.      Members often made these payments in cash, and Local 953 kept the cash in a safe in its Albuquerque, New Mexico, office.  See Sealed Supplement at 3.

6.      Local 953 used a combination of a membership tracking software and handwritten receipts to record these payments.  See Sealed Supplement at 3.

7.      Pangburn was responsible for entering data on dues payments in Local 953's QuickBooks program.  See Sealed Supplement at 3.

8.      The administrative assistant wrote out the deposit slips and Pangburn delivered the cash to a bank to deposit.  See Sealed Supplement at 3.

9.      Pangburn typically made these cash deposits monthly.  See Sealed Supplement at 3.

10.     Local 953 also kept a separate bag containing petty cash in the safe.  See Sealed Supplement at 5.

11.     Pangburn and the administrative assistant had access to and used the petty cash for work-related purchases.  See Sealed Supplement at 2.

12.     Pangburn had authority to purchase office supplies in amounts of up to $500.00 with Local 953's credit card.  See Sealed Supplement at 4.

13.     Pangburn's supervisor kept the credit card, so Pangburn was only able to use the credit card for transactions over the internet.  See Sealed Supplement at 4.

14.     Pangburn's supervisor did not, however, regularly monitor or supervise the QuickBooks account, the cash held in Local 953's safe, or routine wage and tax payments.  See Plea Agreement ¶ 8, at 4.

15.     Pangburn and the administrative assistant informally monitored the petty cash and the dues payments kept in Local 953's safe.  See PSR ¶ 22, at 5.

16.     Beginning in July, 2018, Pangburn arranged additional payments to herself through the same method that she used to make weekly wage payments for all Local 953 employees.  See Plea Agreement ¶ 9, at 4.

17.     After each such entry, QuickBooks automatically withdrew money from Local 953's bank account and directly deposited the money into Pangburn's bank account.  See Plea Agreement ¶ 9, at 4.

18.     In all, Pangburn directed eighty-nine unauthorized payments to herself through QuickBooks totaling $69,046.37.  See Plea Agreement ¶ 10, at 4.

19.     Because QuickBooks charges a fee for each transaction, Pangburn's unauthorized payments cost Local 953 an additional $422.75 in fees.  See Plea Agreement ¶ 10, at 11.

20.     Towards the end of Local 953's fiscal year, Local 953's accountant reviewed Local 953's QuickBooks transaction history and "quickly saw there was a significant liability which should not have existed," and attributed that liability to Pangburn's extra payments.  PSR ¶ 19, at 5.

21.     Pangburn quickly admitted to the unauthorized QuickBooks payments, "stating she had some financial troubles and things had gotten out of hand."  PSR ¶ 19, at 5.

22.     Local 953 hired the Calibre Group to conduct an audit to determine the extent of Local 953's loss.  See PSR ¶ 27, at 6.

23.     In addition to identifying the unauthorized QuickBooks payments, the audit discovered $3,425.00 of missing or unaccounted-for funds from cash deposits and credit card payments with which Pangburn was possibly involved.  See PSR ¶ 27, at 6-7.

24.     Pangburn produced documentation justifying each credit card payment with the exception of $19.99 in purchases from Amazon.com, about which Pangburn said she knew nothing.  See Sealed Supplement at 4-5.

25.     Pangburn's supervisor mistakenly used the credit card for a personal purchase but, on realizing the mistake, reimbursed Local 953.  See Sealed Supplement at 4.

26.     Pangburn's supervisor reviewed Local 953's credit card statements each month and, before the Calibre Group's audit, never documented any misappropriation or questionable credit card purchases.  See Sealed Supplement at 4.

27.     The audit also revealed unauthorized credit-card payments not attributable to Pangburn.  See PSR ¶ 27, at 7 ("Although Calibre CPA Group found other instances of overpayment and unauthorized credit card charges, the amounts in question could not be determined to be associated with Pangburn.").

28.     In one instance, Local 953's administrative assistant gave Pangburn a bag of cash and a deposit slip listing a deposit of $1,200.00.  See PSR ¶ 22, at 5.

29.     When Pangburn attempted to deposit the bag of cash with the deposit slip, however, the bank teller counted only $800.00 in cash.  See PSR ¶ 22, at 5.

30.     Pangburn maintains that she did not steal any cash associated with this deposit but rather that the administrative assistant incorrectly completed the deposit slip.  See Sealed Supplement at 3.

31.     Pangburn has accused the administrative assistant of misappropriation and misfeasance.  See Sealed Supplement at 3.

32.     The United States' investigation did not reveal that Pangburn made unauthorized payments to herself from Local 953's petty cash.  <u>See</u> Sealed Supplement at 5 ("Pangburn did not use the petty cash fund for personal use at any time.").

33.     The United States' investigation did not reveal that Pangburn made unauthorized purchases with Local 953's credit card.  <u>See</u> Sealed Supplement at 4 ("Pangburn never used the union credit card for personal expenses or anything non-union related.").

34.     The United States' investigation did not reveal that Pangburn made unauthorized payments to herself using Local 953's checkbook.  <u>See</u> Sealed Supplement at 5 ("Pangburn never wrote a check from the union's account that was unauthorized or for a non-union related purchase.").

## <u>PROCEDURAL HISTORY</u>

Pangburn pled guilty to embezzling $69,046.37 and agrees, in the Plea Agreement, that she is responsible for $69,469.12 in restitution, an amount which includes the fees attributable to her unauthorized transactions.  <u>See</u> Plea Agreement ¶¶ 10, 19, at 4, 8; Findings of Fact ("FOF"), <u>supra</u> ¶¶ 16-19, at 4.  The United States Probation Office "USPO" agrees that Pangburn is responsible for $69,469.12, because "this amount can be directly and clearly traced to the defendant."  PSR ¶ 33, at 7.  The USPO asserts, however, that Pangburn is responsible for embezzling $72,894.12 from Local 953.  <u>See</u> PSR ¶ 33, at 7.  To support this assertion, the PSR provides: "The [Calibre Group's] audit discovered $3,425 of missing funds from a cash deposit Pangburn was responsible for."  PSR ¶ 33, at 7.

Pangburn now objects to the USPO's conclusion that Pangburn is responsible for the additional $3,245.00, asserting: (i) the $3,245.00 in missing or unaccounted-for funds is not attributable to a single cash deposit; and (ii) there is insufficient evidence to conclude, by a

preponderance of the evidence, that Pangburn is responsible for the additional $3,245.00.  <u>See</u> Second Objection at 3-4.  Pangburn notes that the Calibre Group initially discovered other, unauthorized payments or transactions that Pangburn was able to justify as legitimate, business-related expenses.  <u>See</u> Second Objection at 3.  Pangburn contends that the USPO's conclusion "appears to be based on the fact that she admitted responsibility for writing unauthorized payroll checks, and not any separate evidence, and is a conclusion not reached by the investigators." Second Objection at 3.  Pangburn thus argues that the PSR should be amended to reflect that: (i) the unaccounted-for $3,245.00 is attributable to a series of transactions and not to a single deposit; and (ii) the unaccounted-for $3,245.00 is not attributable to Pangburn.  <u>See</u> Second Objection at 4.

The USPO responds and agrees that the $3,245.00 is not attributable to a single deposit, but the USPO maintains that Pangburn is responsible for the $3,245.00.  <u>See</u> Second Addendum to Presentence Report at 1-2, filed June 1, 2020 (Doc. 31)("Second Addendum").  The USPO notes that only two employees -- Pangburn and the administrative assistant -- had access to Local 953's cash box.  <u>See</u> Second Addendum at 2.  The USPO further notes that the administrative assistant would "make the deposit ticket and give the cash and deposit ticket to the defendant," who "was tasked with taking the deposit ticket to the bank."  Second Addendum at 2.  The USPO points to "one occasion," in which the administrative assistant "made out a deposit slip for $1,200; however, bank records reflect that only $800 was deposited."  Second Addendum at 2.  The USPO then concludes that, "[b]y a preponderance standard, it is more likely than not[ that] the defendant obtained the cash from the deposits to further her criminal act in the instant offense, which consisted of her obtaining the funds illegally from her employer."  Second Addendum at 2.  The USPO thus maintains that Pangburn stole the additional $3,245.00.  <u>See</u> Second Addendum at 2.

## ANALYSIS

The Court concludes that the additional $3,245.00 is not attributable to Pangburn.  "The district court's determination of relevant conduct is a factual finding subject to a preponderance of the evidence standard, and clear error review."  United States v. Schmidt, 353 F. App'x 135 (10th Cir. 2009)[3](citing United States v. Zapata, 546 F.3d 1179, 1192 (10th Cir. 2008)).  Accordingly, the Court's finding regarding Pangburn's offense conduct "must be 'simply not plausible or permissible in light of the entire record on appeal.'"  United States v. Schmidt, 353 F. App'x at 135 (quoting United States v. Zapata, 546 F.3d at 1192).

There is no direct evidence that Pangburn stole all of the additional $3,245.00.  Instead, the USPO bases its assertion on the Calibre Group's finding that discrepancies between Local 953's cash and its transaction history total $3,245.00.  See Second Addendum at 2.  Both the Calibre Group and the United States conclude, however, that Local 953 keeps inaccurate and inconsistent transaction records.  See PSR ¶ 27, at 7 (noting that the Calibre Group discovered other missing funds or unaccounted-for transactions).  It is this shoddy recordkeeping that led the United States to conclude that the additional $3,245.00 was not directly attributable to Pangburn.  See Sealed

---

[3]United States v. Schmidt is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent. . . .  And we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Schmidt has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Supplement at 2 ("As a result of the poor recordkeeping system that was used by the local for cash receipts and the fact that other union staff . . . had access to the cash, the missing cash receipts indicated by Calibre are not included in the . . . loss total.").  Similarly, Pangburn justified the credit-card transactions that Calibre Group initially attributed to Pangburn's misconduct, with the exception of $19.99 in Amazon.com charges, but Pangburn shared access to the credit card with other Local 953 employees, some of whom occasionally used the credit card for personal purchases.  See FOF ¶¶ 12-13, at 3; id. ¶¶ 23-25, at 5.  Additionally, Pangburn's supervisors reviewed Local 953's credit card statement each month and, before Calibre Group's audit, documented no instances of unauthorized purchases attributable to Pangburn.  See FOF ¶ 26, at 5.

The USPO further asserts that, because Pangburn embezzled $69,046.37, it is more likely than not that Pangburn stole the additional $3,425.00.  See Second Addendum at 2.  Calibre Group similarly suspected that additional accounting discrepancies were attributable to Pangburn, as her discovered embezzlement made her the likely cause of the discrepancies.  See FOF ¶¶ 22-23, at 4.  Pangburn nonetheless is able to justify many transactions that Calibre Group initially saw as suspicious.  See FOF ¶ 24, at 5.  Moreover, the United States' investigation revealed no misconduct attributable to Pangburn in transactions that Calibre Group initially viewed as suspect.  See FOF ¶¶ 32-34, at 6.  Local 953's financial recordkeeping, along with Pangburn's ability to explain transactions that this recordkeeping rendered questionable, make the Court hesitate to attribute the unaccounted-for $3,425.00 to Pangburn.

Although the USPO attributes the entire unaccounted-for $3,245.00 to Pangburn, the USPO points to a single instance in which Pangburn was may have stolen, at most, $400.00 in unauthorized money.  See Second Addendum at 2.  Indeed, the only instance to which the USPO points in support of its assertion is when Local 953's administrative assistant wrote a deposit slip

for $1,200.00 but Pangburn deposited cash totaling $800.00.  See FOF ¶¶ 28-30, at 5.  Neither the United States nor the USPO, however, can verify independently that the administrative assistant wrote an accurate deposit slip, and Pangburn accuses the administrative assistant of misappropriation and misfeasance.  See FOF ¶ 31, at 5.  Moreover, Pangburn contends that the administrative assistant wrote an inaccurate deposit slip.  See Second Objections at 2-3; Sealed Supplement at 3-4.  In sum, the USPO's assertion is based primarily on Calibre Group's initial finding of $3,245.00 in unaccounted funds, but Pangburn justified many transactions that the Calibre Group initially viewed as suspect.  See FOF ¶ 24, at 5.  Further investigation by the Calibre Group and the United States thus contradict the USPO's assertion that the $3,245.00 remains unaccounted-for.  The USPO then points to a single instance of discrepancy between a deposit slip and the deposited amount, but the United States, the USPO, and the Calibre Group cannot independently verify that the deposit slip was accurately written.  While it is certainly possible that Pangburn stole additional money from Local 953, "the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence."  United States v. Kepler, 2012 WL 592422, at *6.

Accordingly, the Court sustains the Second Objection and concludes that the PSR should be amended.  First, the USPO agrees with Pangburn that the additional $3,245.00 is not attributable to a single deposit.  See Second Addendum at 2.  The PSR's ¶ 27, at 6, thus, should be amended to reflect that the unaccounted-for $3,245.00 results from more than one cash deposit.  Second, as discussed, there is insufficient evidence to support the PSR's conclusion that the $3,245.00 is attributable solely to Pangburn's misconduct.  The PSR's ¶ 27, at 7, thus, should be amended.  That paragraph currently provides, in part:

The audit discovered $3,425 of missing funds from a cash deposit Pangburn was responsible for. Although Calibre CPA Group found other instances of overpayment and unauthorized credit card charges, the amounts in question could not be determined to be associated with Pangburn. In total, Pangburn is responsible for a total actual loss amount of $72,894.12.

PSR ¶ 27, at 7. The PSR's ¶ 27 should be amended to read: "The audit discovered a total of $3,245.00 of missing funds from cash deposit discrepancies. Although Calibre CPA Group found other instances of overpayment and unauthorized credit card charges, the amounts in question could not be determined to be associated with Pangburn." Similarly, the PSR ¶ 33 should also be amended. That paragraph currently provides:

> In total, the insurers are requesting restitution in the amount of $75,817.65. The Probation department had determined the actual loss as $72,894.12. By a preponderance of the evidence, the defendant was held accountable for cash missing from deposits. However, the Probation department is in agreement with both parties and the Rule 11(c)(1)(B) plea agreement, in that the defendant shall pay restitution in the total amount of $69,469.12, as this amount can be directly and clearly traced to the defendant.

PSR ¶ 33, at 7. That paragraph should be amended to reflect that the actual loss attributable to Pangburn's misconduct is $69,469.12, the amount to which the parties agreed in the Plea Agreement.

IT IS ORDERED that the Second Objection to Presentence Report - Total Loss Amount, filed June 1, 2020 (Doc. 29), is sustained.

UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Benjamin J. Christenson
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Kari Converse
  Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

*Attorneys for the Defendant*